GOLD COAST PROPERTY
MANAGEMENT INC.,

               **Plaintiff,**

v.

CERTAIN UNDERWRITERS AT
LLOYD'S LONDON, et al.,

               **Defendants,**

_____/

## ORDER

**THIS CAUSE** comes before the Court on Defendant's Motion to Compel Arbitration and Stay the Proceedings [ECF No. 11] and Plaintiff's Motion to Remand [ECF No. 30]. The Court has carefully considered the Motions and the record and is otherwise fully advised. For the following reasons, the Motion to Compel Arbitration is granted and the Motion to Remand is denied.

## BACKGROUND

The primary issue in this action is whether Plaintiff Gold Coast Property Management Inc. ("Plaintiff") may be compelled to arbitrate its insurance coverage dispute under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention").

### I.    Applying for Coverage

On November 28, 2016, USI Insurance Services, Inc. ("USI"), Plaintiff's insurance agent, tendered a submission for placement of Plaintiff's property insurance to AmRisc, LLC ("AmRisc"), an insurance administrator. USI had dealt with AmRisc for other clients in the past and was aware that AmRisc utilized the AR Compass 01 15 Form, which contained the arbitration

provision at issue in this action. Pursuant to USI's submission, AmRisc provided eight successive quotes to USI for Plaintiff's property insurance. In the body of each quote, AmRisc noted that [a]ll coverages are as per the standard forms and endorsement in use by AmRisc, LLC at the time of binding, unless otherwise noted." [ECF No. 42, Ex. A, ¶ 12].

On February 24, 2017, USI requested that coverage be bound per the terms of the last quote. Included in the request were a commercial insurance application (the "Application"), an AmRisc property application and statement of values, a disclosure notice of terrorism insurance coverage, a flood notice, and a surplus lines disclosure and acknowledgment (the "Surplus Lines Disclosure"), all signed by Plaintiff's manager, William M. Murray. [ECF No. 42-1, at 97-99, 101-102].[1] Based on the signed Application and other documentation, a Commercial Compass Form Policy (the "Policy") was bound by AmRisc on February 24, 2017, on behalf of the Insurers.[2] The Policy was insured by eight insurance companies under eight separate policy numbers, with each insurance company both receiving premiums from Plaintiff and covering Plaintiff in various percentages for various risks. The insurers were: Certain Underwriters at Lloyd's London ("Underwriters"), Indian Harbor Insurance Company, General Security Indemnity Company of Arizona, United Specialty Insurance Company, Lexington Insurance Company, Princeton Excess and Surplus Lines Insurance Company, International Insurance Company of Hannover SE (collectively the "Defendants"), and QBE Specialty Insurance Company.[3]

---

[1] The Surplus Lines Disclosure required the signor to acknowledge that "the policy forms [and] conditions . . . may be different from those policies utilized in the admitted market." In addition, it advises the signor to "carefully read the entire policy." [ECF No. 42-1, at 102].

[2] The Binder included the same qualifying language as the quotes, including that "[a]ll coverages are as per the standard forms and endorsement in use by AmRisc, LLC at the time of binding, unless otherwise noted." [ECF No. 42, Ex. A, ¶ 12].

[3] QBE is not a named Defendant.

## II. The Policy Provisions

The Policy contains the following arbitration provision:

### SECTION VII – CONDITIONS

C.      Arbitration Clause:  All matters in difference between the Insured and the Companies (hereinafter referred to as "the parties") in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out.

Policy, at 26, [ECF No. 42-1].

In addition, the Policy contains a Service of Suit Clause endorsement which provides in

pertinent part:

### Service of Suit Clause (U.S.A.)
### NMA 1998 4/24/86 (USA date)

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States.  Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or any State in the United States.

[ECF No. 30-2].  The Service of Suit Clause endorsement notes that "[t]his endorsement changes

the Policy" and instructs parties to "please read it carefully."  *Id.*

## III. Loss

After Hurricane Irma hit South Florida, Plaintiff submitted a claim under the Policy for

losses to its property.   Plaintiff contends that Defendants delayed in making a coverage

determination.  As a result, on July 26, 2018, Plaintiff filed a Complaint for Damages and Petition

for Declaratory Judgment against Defendants in the Eleventh Judicial Circuit in and for Miami-

Dade County, Florida. [ECF No. 1-2].   On September 6, 2018, Underwriters, the only served

defendant at the time, sent Plaintiff a demand for arbitration pursuant to the arbitration provision in the Policy.

## IV.    Removal

On September 10, 2018, Underwriters removed the action to this Court asserting this Court has federal question jurisdiction because the arbitration provision in the Policy falls under the New York Convention.  Underwriters then moved to compel arbitration and stay the proceedings.[4] Plaintiff has moved to remand, arguing that the New York Convention's jurisdictional prerequisites are not met—namely that the arbitration clause is not an agreement in writing and was not signed by the parties.  In addition, Plaintiff argues that the Service of Suit Policy Endorsement supersedes the arbitration clause or makes it ambiguous.

## DISCUSSION

## I.    Motion to Remand

Before addressing the Motion to Compel, the Court must ascertain whether it has jurisdiction over this action.  *See Ytech 180 Units Miami Beach Invs. LLC v. Certain Underwriters at Lloyd's London*, 359 F. Supp. 3d 1253, 1259 (S.D. Fla. 2019) ("federal courts must 'first assure themselves of their jurisdiction by deciding whether the agreement-in-writing requirement has been met' before 'enforcing an [arbitration] agreement or confirming an award under the Convention.'" (quoting *Czariza, L.L.C. v. W.F. Poe Syndicate,* 358 F.3d 1286, 1291 (11th Cir. 2004))).

The New York Convention requires contracting states to recognize and enforce foreign arbitration agreements.  *Escobar v. Celebration Cruise Operator, Inc.*, 805 F.3d 1279, 1284 (11th

---

[4]    On October 17, 2018, after service, the other Defendants filed a notice adopting the Motion to Compel. [ECF No. 33].

Cir. 2015) (citing the New York Convention). The Convention Act[5] provides federal courts with original jurisdiction over actions relating to an arbitration agreement falling under the New York Convention. *See* 9 U.S.C. § 203. In addition, the Convention Act "include[s] broad grounds for removal '[w]here the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention.'" *Outokumpu Stainless USA, LLC v. Converteam SAS*, 902 F.3d 1316, 1323 (11th Cir. 2018). The "initial jurisdictional inquiry is distinct from a determination of whether the parties are bound to arbitrate." *Id.* at 1324. As a result, in analyzing whether it has jurisdiction, the Court "need not—and should not—examine whether the arbitration agreement binds the parties before it." *Id.* The Court's only inquiry for purposes of jurisdiction is whether "on the face of the pleadings and the removal notice, there is a non-frivolous claim that the lawsuit relates to an arbitration agreement that 'falls under the Convention.'" *Id.*

The parties do not dispute that this action—an insurance dispute—relates to the arbitration provision in the Policy. Accordingly, the Court's only inquiry in determining jurisdiction is whether the notice of removal and attached pleadings sufficiently describe an arbitration agreement that "falls under the Convention." *Id.* To make this determination, the Court considers whether Defendants have

> articulated a non-frivolous basis (1) that there is an agreement in writing, that is, an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams; (2) that the agreement provides for arbitration in the territory of a signatory of the Convention; (3) that the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) that a party to the agreement is not an American

---

[5]     Courts "often refer to the entirety of Title 9 as the Federal Arbitration Act. . . ." *Escobar*, 805 F.3d at 1283 n. 3. However, because Chapter 1 and Chapter 2 of Title 9 have different requirements, the Court differentiates between the two in this Order by referring to Chapter 2 as the Convention Act. *See Id.* (referring to Chapter 1 as the FAA and Chapter 2 as the Convention Act).

citizen, or that the commercial relationship has some reasonable relationship with one or more foreign states.

*Id.* (citing *Bautista v. Star Cruises*, 396 F.3d 1289, 1295–96 n.7 & 9 (11th Cir. 2005)). Here, the parties only dispute the first jurisdictional prerequisite—whether there is an agreement in writing signed by the parties.

Upon review of the Notice of Removal and pleadings, the Court finds that Defendants have established a non-frivolous claim that the Policy constitutes a signed written agreement to arbitrate. Plaintiff argues that there is no signed agreement to arbitrate because the Policy itself is not signed. The Court disagrees. Plaintiff, via its manager, signed the Application. Under Florida law, an insurance contract is "construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by *any application* therefor or any rider or endorsement thereto." Fla. Stat. § 627.419(1) (emphasis added). In addition, "[t]he application . . . becomes part of the agreement between the parties and the policy together with the application form the contract of insurance." *Matthews v. Ranger Ins. Co.*, 281 So. 2d 345, 348 (Fla. 1973). *See also Zenith Ins. Co. v. Commercial Forming Corp.*, 850 So. 2d 568, 570 (Fla. 2d DCA 2003) (holding that application becomes part of the policy). As a result, the Court finds that Plaintiff's signature on the Application, via its manager, which became a part of the Policy, is sufficient to constitute a signature on a written agreement to arbitrate.

Accordingly, the Court finds that Defendants have met their burden of proof to establish that the lawsuit relates to an arbitration agreement that falls under the Convention such that this Court has jurisdiction.[6]

---

[6] While Plaintiff also argues that it never agreed to arbitrate and that the Policy's Service of Suit endorsement supersedes the arbitration provision and/or renders it ambiguous, these are arguments to be addressed on a motion to compel. *See Outokumpu*, 902 F.3d at 1324 ("[I]n determining jurisdiction the district court need not—and should not—examine whether the arbitration agreement binds the parties before it."); *Ytech*, 359 F. Supp. 3d at 1262 ("[I]ssues of validity, enforceability, and contractual interpretation [of the arbitration provision] are not part of the

## II.     Motion to Compel Arbitration

Having found it has jurisdiction, the Court must now address the Motion to Compel.  The Court's inquiry on a motion to compel arbitration, while limited, "is necessarily more rigorous than on a motion to remand because the district court must determine whether the parties before the court agreed to arbitrate their dispute." *Outokumpu*, 902 F.3d at 1325.  However, the same prerequisites apply.  *See Bautista*, 396 F.3d at 1294 (motion to compel arbitration must be granted if the four jurisdictional prerequisites are met).  As detailed above, the only jurisdictional prerequisite in dispute is whether there is a written agreement to arbitrate signed by the parties.

The Court has already determined that there is a signed agreement.  Plaintiff, however, attempts to bypass the signed agreement by arguing that (1) it had no knowledge of the arbitration provision and (2) the Policy's Service of Suit clause supersedes the arbitration provision or renders it ambiguous.  The Court disagrees.

First, Plaintiff argues that it was unaware of the arbitration provision in the Policy and, therefore, never agreed to arbitrate.  Plaintiff's argument is without merit.  In signing the Surplus Lines Disclosure Acknowledgement, Mr. Murphy acknowledged that he understood that "the policy forms [and] conditions . . . may be different from those policies utilized in the admitted market," and that he was "advised to carefully read the entire policy." [ECF No. 42-1, at 102].  Moreover, the binder issued on February 24, 2017, memorialized the policy form that would be used.  This form, identical to the Policy, includes the arbitration provision.  Plaintiff cannot now contend that it was unaware of the arbitration provision.  *See Bautista*, 396 F.3d at 1300-01 (arbitration clause in employment contracts upheld where plaintiffs argue they were not provided

Court's jurisdictional calculus.").

official notice of the agreement to arbitrate); *Open Sea Inv., S.A. v. Credit Agricole Corporate and Inv. Bank*, No. 17-22366, 2018 WL 1120902, * (S.D. Fla. Jan. 12, 2018) (finding first jurisdictional prerequisite under the New York Convention met where plaintiff signed an application which incorporated by reference an agreement containing an arbitration provision"); *Doe v. Royal Caribbean Cruises, Ltd.*, 365 F. Supp. 2d 1259, 1262 (S.D. Fla. 2005) (court ordered arbitration even though plaintiff claimed she could not recall signing an agreement with an arbitration clause).

Plaintiff also contends that the Policy's Service of Suit Clause supersedes the arbitration provision or renders it ambiguous. The Court disagrees.

Under Florida law, "[a]n ambiguity exists only where contractual terms cannot be reconciled." *Lloyds Underwriters v. Netterstrom*, 17 So. 3d 732, 735 (Fla. 1st DCA 2009) (citing *Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135, 1139 (Fla.1998)). "[W]here the terms can be reconciled, the clear language of the contract controls." *Id.* Moreover, "[w]hen a contract contains apparently conflicting clauses, [the Court] must interpret it in a manner that would reconcile the conflicting clauses, if possible." *Id.*

Here, the Court reads the Policy's Service of Suit Clause and the arbitration provision as compatible. The Policy mandates arbitration and the Service of Suit Clause merely provides a means for the parties to go to court to either compel arbitration or enforce an arbitration award.[7] Indeed, courts consistently read arbitration clauses and service of suit clauses as compatible. *Physicians Group, LLC v. Certain Underwriters at Lloyd's London Subscribing to Policy No. 458898*, 8:13-CV-1824-T-30TBM, 2013 WL 12170607, at *2 (M.D. Fla. Aug. 8, 2013) ("Many courts have confronted the issue of 'conflicting' arbitration clause and service of suit

---

[7]     The Court's interpretation of the Service of Suit Clause and the arbitration provision is consistent with the New York Convention's "strong presumption in favor of arbitration of international commercial disputes." *Indus. Risk. Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1440 (11th Cir. 1998).

clauses and have consistently read the two clauses as compatible. Courts treat the service of suit clauses as resolving the issue of personal jurisdiction for purposes of an arbitration award."); *JHS Capital Advisors, LLC v. Westchester Surplus Lines Ins. Co.*, No. 8:12–cv–2006–T–23AEP, 2013 WL 616946, *2 (M.D. Fla. Feb. 19, 2013) ("The service of suit endorsement neither contradicts no supersedes the arbitration provision."); *Netterstrom*, 17 So. 3d at 736 (holding that a policy's arbitration clause and service of suit clause serve different purposes—the arbitration provision provides a means to resolve a dispute and the service of suit clause provides a method of obtaining a judgment).

Accordingly, the Court finds that all of the jurisdictional prerequisites to compel arbitration have been met and this action must proceed in arbitration.

## CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** that

1. Plaintiff's Motion to Remand [ECF No. 30] is **DENIED.**

2. Defendant's Motion to Compel Arbitration and Stay the Proceedings [ECF No. 11] is **GRANTED.**

3. This action is **STAYED** pending arbitration and **CLOSED** for administrative purposes. The parties shall file a status report with the Court within fourteen (14) days of the conclusion of the arbitration proceedings.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 14th day of June, 2019.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE